<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| DASHAND CHASE, | : | |
| | : | Civil Action No. 09-6172 (RBK) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| DET. EDWARD J. RIEGEL, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>

**KUGLER**, District Judge

Plaintiff Dashand Chase, a pretrial detainee confined at Atlantic County Justice Facility, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.  <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on October 19, 2009, Detective Edward Riegel, Jr., of the Atlantic City Police Department caused D.E.A. agent Kenny to come to Plaintiff's house and arrest him without a warrant.  Plaintiff alleges that Detective Richard Johnson and Detective Brian Haberkern questioned him "after 24 hours of been illegally detained and read me Miranda rights after 24 hours and also lied in reports."  (Amended Complaint [6], ¶ 4.)

Plaintiff has also submitted to the Court a supplemental document [8] entitled "Points of 4th Amendment Violations."  In that document, Plaintiff asserts that he was arrested for "weapons violation/possession/Disorderly public places," which he recharacterizes as "basically" that Detective Riegel is trying to say he is in violation of probation.  Plaintiff also states in the supplemental document that holding him for 24 hours without a bail hearing is a violation of his due process rights and his Eighth Amendment right not to be held under excessive bail and cruel and unusual punishment.  Plaintiff alleges that he now has a "no bail detainer" because of the alleged violation of his probation.

2

Plaintiff names as defendants Det. Edward J. Riegel, Jr., Municipal Court Judge Bruce Weeks, Atlantic County Warden Shawn Thomas, Superior Court Judge Charles Middlesworth, D.E.A. Maple Shade NJ, Detective Richard Johnson, Detective Brian Haberkern, and DEA Agent Kenny.

Plaintiff asks to be released,[1] for the criminal case against him to be dismissed, and for compensatory and punitive damages.  He also asks for "federal charges" against each of the defendants.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United

_____

[1] Any action for pre-trial release must be brought as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 following exhaustion of state remedies.  Thus, all of Plaintiff's claims challenging his detention on the grounds of excessive bail will be dismissed without prejudice.

States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must
"accept as true all of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiff."  Morse v. Lower
Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis
either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,
325 (1989) (interpreting the predecessor of § 1915(e)(2), the
former § 1915(d)).  The standard for evaluating whether a
complaint is "frivolous" is an objective one.  Deutsch v. United
States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading
requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and
plain statement of the claim showing that the pleader is entitled
to relief."  A complaint must plead facts sufficient at least to
"suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d
218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary;
the statement need only 'give the defendant fair notice of what
the ... claim is and the grounds upon which it rests.'"  Erickson
v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106

4

S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
dismiss, courts "are not bound to accept as true a
legal conclusion couched as a factual allegation").
Factual allegations must be enough to raise a right to
relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007)

(citations omitted).

The Supreme Court has demonstrated the application of these

general standards to a Sherman Act conspiracy claim.

In applying these general standards to a § 1
[conspiracy] claim, we hold that stating such a claim
requires a complaint with enough factual matter (taken
as true) to suggest that an agreement was made. Asking
for plausible grounds to infer an agreement does not
impose a probability requirement at the pleading stage;
it simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence of
illegal agreement. And, of course, a well-pleaded
complaint may proceed even if it strikes a savvy judge
that actual proof of those facts is improbable, and
"that a recovery is very remote and unlikely." ... It
makes sense to say, therefore, that an allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice. Without more, parallel conduct does
not suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality. Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief." A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an

> account of a defendant's commercial efforts stays in
> neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the

part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

> Rule 10(b) of the Federal Rules of Civil Procedure provides:

> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances.  ...  If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants
> if:
>         (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect
> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; <u>and</u>
>         (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added).  <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252 Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a),
> plaintiff may join multiple defendants in a single
> action only if plaintiff asserts at least one claim to
> relief against each of them that arises out of the same
> transaction or occurrence and presents questions of law
> or fact common to all.  If the requirements for joinder
> of parties have been satisfied, however, Rule 18 may be
> invoked independently to permit plaintiff to join as
> many other claims as plaintiff has against the multiple
> defendants or any combination of them, even though the

8

> additional claims do not involve common questions of
> law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane,
Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be
liberally construed in the interest of convenience and judicial
economy.  Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002).
However, the policy of liberal application of Rule 20 is not a
license to join unrelated claims and defendants in one lawsuit.
See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir.
2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v.
Rogers, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground
for dismissing an action.  Instead, a court faced with a
complaint improperly joining parties "may at any time, on just
terms, add or drop a party.  The court may also sever any claims
against a party."

Where a complaint can be remedied by an amendment, a
district court may not dismiss the complaint with prejudice, but
must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34
(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d
Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane
v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal
pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg
County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

9

III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.  ANALYSIS

A.  Claims Dropped from Amended Complaint

In the original Complaint [1], Plaintiff alleged that Municipal Court Judge Bruce Weeks denied his request for a probable cause hearing, that Superior Court Judge Charles Middlesworth failed to respond to letters alleging that Plaintiff was being illegally detained, and that Warden Shawn Thomas was holding Plaintiff without proper documentation.  Plaintiff also

10

named as a defendant D.E.A. Maple Shade, presumably a local branch of the United States Drug Enforcement Agency.  None of these entities or individuals is named as a defendant in the Amended Complaint, and none of these allegations are repeated in the Amended Complaint.  Nor does Plaintiff purport to incorporate into the Amended Complaint any allegations contained in the original Complaint.

When an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id. Plaintiff made no such "clear and explicit" adoption of claims against Judge Weeks, Judge Middlesworth, Warden Shawn Thomas, or the D.E.A. Maple Shade.  Accordingly, all claims against these defendants will be dismissed with prejudice.

In any event, the state judges are immune.  See 28 U.S.C. § 1915(e) (requiring, in in forma pauperis actions, dismissal of claims for monetary relief against defendants who are immune from such relief).  As a general rule, judges acting in their judicial

11

capacity are absolutely immune (in both their individual and official capacities) from suit for monetary damages under the doctrine of judicial immunity.  See Mireles v. Waco, 502 U.S. 9, 9 (1991).  Judicial immunity can be overcome only for actions not taken in a judicial capacity, id., or for actions taken in a complete absence of all jurisdiction, 502 U.S. at 11-12. Allegations that actions were undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity.  See Forrester v. White, 484 U.S. 219, 227 (1988).

Judicial immunity also shields judges from suit for injunctive relief.  See 42 U.S.C. § 1983, (state judges) (abrogating in part Pulliam v. Allen, 466 U.S. 522, 541-42 (1984)).  See also Bolin v. Story, 225 F.3d 1234 (11th Cir. 2000) (and cases cited therein) (federal judges); Mullis v. United States Bankruptcy Court, 828 F.2d 1385, 1391-94 (9th Cir. 1987), cert. denied, 486 U.S. 1040 (1988) (adequate remedies are provided through the appeals process and the All Writs Act, 28 U.S.C. § 1651).

Here, the challenged actions were taken by the defendant judges in their judicial capacity.  Accordingly, they are immune from any order for monetary or injunctive relief.

In addition, Plaintiff has failed to state a claim against the Warden for wrongful detention.  Plaintiff admits that he was

12

arrested, whether or not properly, and there is nothing to suggest that the Warden was aware of any defect so as to subject him to liability for deprivation of liberty without due process. See, supra, discussion of claims for false arrest and false imprisonment.

Finally, Plaintiff has alleged no facts suggesting that he can bring a claim against the U.S. Drug Enforcement Agency.  The United States has sovereign immunity except where it consents to be sued.  United States v. Mitchell, 463 U.S. 206, 212 (1983). In the absence of such a waiver of immunity, a plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against government employees in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).  Plaintiff can proceed against the United States only to the extent he can state a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. The Federal Tort Claims Act ("FTCA") is a limited waiver of the sovereign immunity of the United States and provides, generally, that the United States shall be liable, to the same extent as a private party, "for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the

Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b); see 28 U.S.C. § 2674. Constitutional violations, however, are not cognizable under the FTCA; state law provides the source of substantive liability under the FTCA. See F.D.I.C. v. Meyer, 510 U.S. 471, 477-78 (1994); Webb v. Desan, 250 Fed.Appx. 468, 2007 WL 2962604 (3d Cir., Oct. 11, 2007). Accordingly, Plaintiff cannot bring a claim under the FTCA for an alleged unlawful seizure in violation of the Fourth Amendment.

B.   False Arrest Claim Against Det. Riegel

Plaintiff alleges that Detective Riegel "maliciously" put into place a series of events leading to his arrest, without a warrant, by himself and D.E.A. Agent Kenny.[2]

Under the Fourth Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, Mapp v. Ohio, 367 U.S. 643 (1961), the people are to be "secure in their persons, houses, papers, and effects, against unreasonable

---

[2] Plaintiff alleges that he was arrested for weapons violations, possession, disorderly conduct in a public place. The police paperwork attached to Plaintiff's supplemental documentation reflects that he was arrested on October 19, 2009, for robbery, in violation of N.J.S.A. 2C:15-1. The Arrest Report also attached to Plaintiff's supplemental documentation reflects that he was arrested pursuant to Warrants W-2009-007530-0102 and W-2009-007531-0102 and that the pending charges included violations of N.J.S.A. 2C:15-1A(1) (robbery), 2C:5-2A(1) (carjacking), 2C:39-4D (possession of a weapon for an unlawful purpose), and 2C:39-5D (unlawful possession of a weapon).

14

searches and seizures, ... and no Warrants shall issue, but upon probable cause."

Supreme Court cases construing the Fourth Amendment "reflect the ancient common-law rule that a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was a reasonable ground for making the arrest." United States v. Watson, 423 U.S. 411, 418 (1976) (referring to arrest in a public place). "The necessary inquiry, therefore, was not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest." Id. at 417.

"Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995) (citations omitted).

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. See Walmsley v. Philadelphia, 872 F.2d 546 (3d

15

Cir. 1989)(citing cases); see also, Albright v. Oliver, 510 U.S. 266, 274 (1994)(a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).  Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification." Ramirez v. United States, 998 F. Supp. 425, 434 (D.N.J. 1998) (quoting Fleming v. United Postal Service, Inc., 604 A.2d 657, 680 (N.J. Law Div. 1992)).

To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements:  (1) that there was an arrest; and (2) that the arrest was made without probable cause. Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed." Lind v. Schmid, 67 N.J. 255, 262 (1975).  "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).  Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein

16

v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).

Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. Manalapan, 47 F.3d 628, 636 (3d Cir. 1995); Palma v. Atlantic County, 53 F. Supp. 2d 743, 755 (D.N.J. 1999)(citing Groman). See also Anela v. City of Wildwood, 595 F. Supp. 511, 512 (D.N.J. 1984)(holding a person for any length of time without legal justification may be a violation of the right to liberty under the Fourteenth Amendment and thus states a claim of false imprisonment under § 1983).[3]

Finally, the Supreme Court has never held "that violations of state arrest law are also violations of the Fourth Amendment;" to the contrary, "when States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same." Virginia v. Moore, 128 S.Ct. 1598, 1605 (2008).

---

[3] While "[a] false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law[,]" Baker v. McCollan, 443 U.S. 137, 142 (1979), the claim is derivative of a Fourth Amendment violation for arrest without probable cause. See Groman, 47 F.3d at 636.

Here, in support of his allegations, Plaintiff has attached to his submissions a "Full case print-out" of the Atlantic City Police Department regarding the investigation of the alleged crime, authored by Detective Riegel, which includes the following information as of September 30, 2009, more than two weeks before the challenged arrest.

> The undersigned Det E Riegel along with Det Richard Johnson reviewed the investigation, regarding the identification of Deshand Chase by Brandy Wicks, in the interview of September 29th. We both felt that Deshand Chase was suspect identified in Bally's Surveillance footage, based on the photo we recovered from the NCIC Criminal History.
> On September 29th we updated the TRAKS Bulletin/Amber Alert to reflect the knicknames provided Brandy Wicks.

> At approximately 11:00AM on September 30th, Camden Police Det Cheryl Campbell contacted the undersigned, reporting, that she has seen our Wanted Flyer. Det Campbell indicates, that she knows one of the males as Deshand Chase aka Mooch. Det Campbell indicates, that she and her partner have arrested Chase on a prior occasion, and she has dealt with him before.
> Det Campbell indicated, that Chase is currently on probation in Camden County. Det Campbell was unaware of the identity of the second male.

> The undersigned contacted Camden County Probation Dept. and spoke with Probation Officer Bula Goldwater, who is assigned to Deshand Chase. Ms Goldwater also had access to our Wanted Flyer. Ofc Goldwater indicates, that the photo in the Wanted Flyer is Deshand Chase.
> Ofc Goldwater indicates, that Chase just missed one of his assigned dates, but she indicates, that she could not violate his probation til he misses three dates.
> Ofc Goldwater provided the last known address for Chase as 1407 Wildwood Ave in Camden. Ofc Goldwater asked for a copy of the Warrant in case Chase did show, which she was eventually given.

18

(Suppl. [8] at page 3 of 10.)

This attachment, submitted by Plaintiff, suggests that a warrant was in place as early as September 30, 2009.  Even if that is not so, however, the facts recited in the report, which Plaintiff does not dispute, indicate that there was surveillance footage of the alleged crime and that several individuals with personal knowledge of Plaintiff identified him, all of which compels the conclusion that there was probable cause to arrest Plaintiff.  Plaintiff seems to be basing his claim on a theory that he was falsely accused of being in violation of his probation, even though his probation officer said she could not violate him based on a single missed appointment.  The basis for the arrest, however, was not violation of probation, but probable cause to believe he had committed the crimes detailed in the arrest records.  Cf. Startzell v. City of Philadelphia, PA, 533 F.3d 183, 204, n. 14 (3d Cir. 2008) (establishment of probable cause with respect to any one charge is sufficient to defeat Fourth Amendment claim for false arrest with respect to multiple charges).  This claim will be dismissed with prejudice.

This Court expresses no opinion as to Plaintiff's guilt with respect to the charged offense(s).

C.   Claims Against D.E.A. Agent Kenny

The claim against D.E.A. Agent Kenny also is based upon the alleged arrest without a proper warrant.

19

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages.  As there was no Fourth Amendment violation in connection with Plaintiff's arrest, this claim also will be dismissed with prejudice.

D.   Interrogation Claims

Plaintiff alleges that he was deprived of his constitutional rights when he was held for 24 hours before being interrogated or given his Miranda rights.  This claim appears to be asserted against Detectives Richard Johnson and Brian Haberkern.

1.   The Miranda Claims

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court set forth certain procedural safeguards that must be employed, to protect an individual's Fifth Amendment privilege against self-incrimination, whenever authorities take an individual into custody, or otherwise deprive him of his freedom in any significant way, and subject him to questioning.

> Our holding will be spelled out with some specificity
> in the pages which follow but briefly stated it is
> this: the prosecution may not use statements, whether
> exculpatory or inculpatory, stemming from custodial
> interrogation of the defendant unless it demonstrates
> the use of procedural safeguards effective to secure
> the privilege against self-incrimination. By custodial
> interrogation, we mean questioning initiated by law
> enforcement officers after a person has been taken into
> custody or otherwise deprived of his freedom of action

in any significant way. As for the procedural
safeguards to be employed, unless other fully effective
means are devised to inform accused persons of their
right of silence and to assure a continuous opportunity
to exercise it, the following measures are required.
Prior to any questioning, the person must be warned
that he has a right to remain silent, that any
statement he does make may be used as evidence against
him, and that he has a right to the presence of an
attorney, either retained or appointed. The defendant
may waive effectuation of these rights, provided the
waiver is made voluntarily, knowingly and
intelligently. If, however, he indicates in any manner
and at any stage of the process that he wishes to
consult with an attorney before speaking there can be
no questioning. Likewise, if the individual is alone
and indicates in any manner that he does not wish to be
interrogated, the police may not question him. The mere
fact that he may have answered some questions or
volunteered some statements on his own does not deprive
him of the right to refrain from answering any further
inquiries until he has consulted with an attorney and
thereafter consents to be questioned.

Miranda v. Arizona, 384 U.S. at 444-445 (footnote omitted).

To the extent Plaintiff seeks to assert a claim for damages

based directly upon the failure to give a proper Miranda warning,

or questioning or acquisition of a statement in violation of his

Miranda warning rights, he fails to state a claim.  "[V]iolations

of the prophylactic Miranda procedures do not amount to

violations of the Constitution itself.  ...  The right protected

under the Fifth Amendment is the right not to be compelled to be

a witness against oneself in a criminal prosecution, whereas the

'right to counsel' during custodial interrogation recognized in

[Miranda] is merely a procedural safeguard and not a substantive

right."  Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir. 1994)

21

(citations omitted).  Thus, Plaintiff has no free-standing Fifth Amendment right to remain silent during interrogation.  Nor does Plaintiff have a free-standing Fifth Amendment claim for denial of the right to counsel during questioning.  See James v. York County Police Dept., 160 Fed.Appx. 126, 133, 2005 WL 3313029, 5 (3d Cir. 2005) (citing Giuffre).  In addition, a person's Sixth Amendment right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated against him." Kirby v. Illinois, 406 U.S. 682, 688 (1972) (plurality opinion).

Insofar as Plaintiff seeks a declaratory judgment that his Miranda rights were violated, see 28 U.S.C. § 2201 (Federal Declaratory Judgment Act), he is not entitled to such relief.

Where a state criminal prosecution has begun before initiation of a federal declaratory judgment action, equitable principles preclude the granting of declaratory relief that might disrupt state criminal proceedings except in very unusual circumstances, where the plaintiff has no adequate remedy at law in the state criminal proceeding or where necessary to prevent immediate irreparable injury.  See Samuels v. Mackell, 401 U.S. 66 (1971); Younger v. Harris, 401 U.S. 37 (1971).

The Court of Appeals for the Third Circuit has framed a test to determine when Younger abstention is appropriate:

(1) there [must be] ongoing state proceedings that are
judicial in nature; (2) the state proceedings [must]

22

implicate important state interests; and (3) the state
proceedings [must] afford an adequate opportunity to
raise federal claims.  Even if the necessary three
predicates exist, however, <u>Younger</u> abstention is not
appropriate if the federal plaintiff can establish that
(1) the state proceedings are being undertaken in bad
faith or for purposes of harassment or (2) some other
extraordinary circumstances exist ... such that
deference to the state proceeding will present a
significant and immediate potential for irreparable
harm to the federal interests asserted.

<u>Schall v. Joyce</u>, 885 F.2d 101, 106 (3d Cir. 1989) (applied in

<u>Anthony v. Council</u>, 316 F.3d 412 (3d Cir. 2003) (in which

plaintiffs sought declaratory and injunctive relief related to

state child support proceedings)).

All three predicates are present here.  In addition,

Plaintiff has failed to allege any facts suggesting bad faith,

harassment, or some other extraordinary circumstance that would

make abstention inappropriate.  Accordingly, this Court will

abstain from entertaining Plaintiff's request for declaratory

judgment with respect to this claim.

This Court expresses no opinion as to whether the

circumstances of the interrogation or the use at trial of any

statement obtained from Plaintiff would violate the <u>Miranda</u> rule.

2.   <u>The Due Process Claim</u>

Plaintiff also asserts that the circumstances of the

interrogation amounted to a violation of Plaintiff's due process

rights under the Fourteenth Amendment.  <u>See</u>, <u>e.g.</u>, <u>Chavez v.</u>

<u>Martinez</u>, 538 U.S. 760, 780 (2003) (under some circumstances,

23

coercive interrogation alone may violate a suspect's right to substantive due process, even when no self-incriminating statement is used against the person interrogated); <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846-47, n.8 (1998) (substantive due process rights are violated only when "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the conscience"); <u>Miller v. Fenton</u>, 474 U.S. 104, 109 (1985) ("certain interrogation techniques, either in isolation or as applied to unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment"); <u>Rochin v. California</u>, 342 U.S. 165 (1952) (due process violated when evidence obtained by subjecting the suspect to an involuntary stomach pump).

Here, nothing about the circumstances alleged rises to the level of conscience-shocking behavior.  <u>Cf.</u> <u>Chavez v. Martinez</u>, 538 U.S. 760 (2003) (no due process violation where police questioned suspect, who had been shot, while suspect was receiving medical treatment).  This claim will be dismissed with prejudice for failure to state a claim.

E.   <u>Request for Imposition of Federal Charges</u>

Plaintiff asks that unspecified federal charges be imposed against the Defendants Riegel, Johnson, Haberkern, and Kenny.

24

Title 18 U.S.C. Sections 241 and 242 are criminal civil rights statutes.  Authorities are in agreement that the submission by a private party of a complaint under §§ 241 or 242 is not the appropriate manner in which to initiate criminal proceedings.  See generally Peters v. Beard, 2006 WL 2174707 (M.D. Pa. June 13, 2006) (Report and Recommendation) (citations omitted), adopted by, 2006 WL 2175173 (M.D. Pa. Aug. 1, 2006).  See also Higgins v. Neal, 52 F.3d 337, 1995 WL 216920 (10th Cir. 1995) (unpubl.) (collecting cases); Caracter v. Avshalumov, 2006 WL 3231465 (D.N.J. Nov. 8, 2006) (collecting cases); Stoll v. Martin, 2006 WL 2024387 (N.D. Fla. July 17, 2006) (collecting cases).

Nevertheless, if a purported criminal complaint warrants action, a Court may refer it to the United States Attorney for action.  United States ex rel. Savage v. Arnold, 403 F.Supp. 172, 174 (E.D. Pa. 1975).  The commencement of a criminal action is governed in part by Federal Rules of Criminal Procedure 3 and 4, which provide some guidance in determining whether a purported criminal complaint merits reference to the United States Attorney.  Rule 3 provides, "The complaint is a written statement of the essential facts constituting the offense charged.  It must be made under oath before a magistrate judge or, if none is reasonably available, before a state or local judicial officer."  Rule 4 provides, in pertinent part, "If the complaint or one or

25

more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must issue an arrest warrant to an officer authorized to execute it."

Here, Plaintiff's allegations are not sufficient to establish probable cause to believe that the defendants violated §§ 241 or 242.[4]  This Court perceives no reason, on the basis of the facts before it, to refer this matter to the United States Attorney.

## V.  CONCLUSION

For the reasons set forth above, the claim for release for violation of the Excessive Bail clause of the Eighth Amendment will be dismissed without prejudice for lack of jurisdiction. All remaining claims will be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to

---

[4] The elements of a violation under § 242 are set forth in United States v. Senak, 477 F.3d 304 (7th Cir.), cert. denied, 414 U.S. 856 (1973).

state a claim.[5]  It does not appear that Plaintiff could cure the defects of his Complaint by amendment.

An appropriate order follows.


                                   s/Robert B. Kugler
                                   Robert B. Kugler
                                   United States District Judge

Dated: December 23, 2010

---

[5] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ...  The dispositive inquiry is whether the district court's order finally resolved the case." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted).  In this case, if Plaintiff can correct the deficiencies of his Complaint, he may file a motion to re-open these claims in accordance with the court rules.